Duquette v. NH DOC                         04-CV-281-SM   08/29/05
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Randy J. Duquette,
      Plaintiff

      v.                                  Civil No. 04-cv-281-SM
                                          Opinion No. 2005 DNH 121
Les Dolecal, Acting Commissioner
of the NH Department of
Corrections and Jane Coplan,
Warden, NH State Prison,
      Defendants


                          **O R D E R**


      Plaintiff, an inmate in the New Hampshire State Prison

("NHSP"), sues for declaratory and injunctive relief,

challenging, on First Amendment grounds, a "Classification

Authorization Decision" recommending that he participate in the

NHSP's sexual offender program ("SOP").  Plaintiff characterizes

the SOP as a religious program that he may not lawfully be

compelled to attend.  Before the court are summary judgment

motions from both parties.  For the reasons given, defendants'

motion for summary judgment is granted and plaintiff's motion is,

necessarily, denied.

**Summary Judgment Standard**

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The role of summary judgment is to pierce the boilerplate of the pleadings and provide a means for prompt disposition of cases in which no trial-worthy issue exists." Quinn v. City of Boston, 325 F.3d 18, 28 (1st Cir. 2003) (citing Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)). When ruling on a party's motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 37 (1st Cir. 2003) (citing Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 185 (1st Cir. 2003)).

**Background**

After a jury trial, plaintiff was convicted of six counts of aggravated felonious sexual assault and one count of felonious sexual assault. On June 13, 1997, he was sentenced to "not more than 20 year(s), nor less than 10 year(s)" for his conviction in

96-S-281. He was also given three identical sentences in 96-S-285, 287, and 288, to run concurrently with the sentence in 96-S-281, a sentence of "not more than 20 year(s), nor less than 10 year(s)," in 96-S-282, to run consecutively to the sentence in 96-S-281, and a sentence of "not more than 20 year(s), nor less than 10 year(s)," in 96-S-284, to run consecutively to the sentence in 96-S-282, as well as a sentence of "not more than 7 year(s), nor less than 3 ½ year(s)," in 96-S-286, to run concurrently with the sentence in 96-S-284.

According to the director of the SOP, given the length of plaintiff's sentences, and the prison's policy of not admitting an inmate into the SOP until he is within one or two years of his minimum release date, plaintiff will not be eligible for admission into the SOP until approximately 2024 or 2025. (Def.'s Mot. Summ. J., Ex. 1 (McCormack Aff.) ¶ 5.) Plaintiff, in an affidavit, challenges McCormack's assessment of his SOP eligibility:

> Despite the defendants' bald assertion that inmates are not admitted into the SOP until two years before their minimum parole date, I have personal knowledge of countless SOP graduates who entered the program with many more than two years left to serve on their

> sentences. I am aware of no mandate preventing entry
> into the SOP until two years before the minimum
> sentence expires. So, any claim that I am not eligible
> for SOP admission for 20 years is contrary to historic
> SOP practices.

(Pl.'s Obj. to Summ. J., Ex. 1 (Duquette Aff.) ¶ 3.) Plaintiff does not, however, identify any of the "countless SOP graduates who entered the program with many more than two years left to serve on their sentences." More importantly, it is undisputed that plaintiff has neither participated in nor applied for admission to the SOP, and it is beyond reasonable dispute that plaintiff will not be eligible for release on parole for quite some time.[1] (Def.'s Mot. Summ. J., Ex. 1 (Lacasse Aff.) ¶ 6.)

Plaintiff was incarcerated immediately after he was sentenced. On July 9, 2003, he appeared before a Department of Corrections ("DOC") Classification Board. In a Classification Authorization Decision dated July 31, 2003, the Board made the following program assignments and recommendations: "Sex Offender Program, Positive Connections." It is not clear from the record

---

[1] It is true that to move from one sentence to a subsequent consecutive sentence, an inmate must be paroled from one to the next, but plaintiff is not even eligible for that form of parole until 2007.

4

precisely how these assignments and recommendations are implemented or enforced.  The prison's Sex Offender Program guide provides that "[p]rogram participation is voluntary, however in most cases men will not be paroled unless programming is completed."  (Defs.' Mot. Summ. J., Ex. 15 at 3.)

At the bottom of the Classification Authorization Decision form issued to plaintiff, an appeal process is outlined:

> If you disagree with this decision, you may appeal to
> the Warden on an Inmate Request Slip within fifteen
> days of receipt of this notice.  If the appeal is
> denied at this level, you may appeal the decision to
> the Commissioner on an Inmate Request Slip within
> fifteen days of receipt of this denial.  The
> Commissioner's decision is final.  You may not appeal
> to the Commissioner until receiving a response from the
> Warden.

(Def.'s Mot. Summ. J., Ex. 10.)

On April 10, 2004, plaintiff sent an Inmate Request Slip to Jane Coplan, Acting Warden of the NHSP, in which he made the following request: "Please remove the SEX OFFENDER PROGRAM and POSITIVE CONNECTIONS from my Classification.  I was not sentenced by the Court to such programs nor do [I] believe in the methods

used in such programs." (Compl., Attach. 3.)  Warden Coplan responded: "You are serving a 10-20 year sentence for sex offenses.  Therefore, the department will make the appropriate recommendations."  (Id.)

It is uncertain whether plaintiff appealed the Warden's decision to the Commissioner.  The record contains the yellow (inmate's) copy of an Inmate Request Slip directed to the Commissioner.[2]  But, the lower portion of that form, typically filled out by the recipient of the inmate request, is incomplete, suggesting that the form never made it to the Commissioner, and

---

[2] That form, dated April 25, 2004, contains the following request:

> Please be advised that Warden Jane Coplan has denied my request to remove the Sex Offender Program (SOP) from my Classification status . . . .  I do not believe in the methods used in the aforementioned program nor was I sentenced by the court to such a program.  Forcing me to participate in this program is violating my right to freedom of religion and is a violation of the separation of powers.  I am exercising my First Amendment Rights.  Accordingly, pursuant to D.O.C. procedure, I am appealing the Warden's decision to you.  Please remove any and all twelve step, faith based, or religious programs off of my Classification status."

(Compl., Attach. 4.)

the record does not contain either the white (offender records) or pink (staff) copies, further suggesting that plaintiff never completed his appeal.  (Compl., Attach. 4.)  Plaintiff asserts that his "subsequent appeal to Acting Commissioner Dolecal was simply ignored" (Pl.'s Mem. of Law (with document no. 59) at 4), while defendants assert that they "have no record of receiving the inmate request slip identified in plaintiff's Attachment 4." (Answer ¶ 6.)

   Plaintiff filed this action on June 1, 2004.  On April 5, 2005, plaintiff directed an Inmate Request Slip to Kim Lacasse, the DOC's Administrator of Classification.  In it, he made a request as follows:

> You sent a list of names to Keith Saunders to be sent to Berlin.  My name was on that list.  Notwithstanding, that I work and have not had a write up in almost seven years, I have and will continue to [participate in] program[ming] with the exception of 12-step, religious or higher power programs.  Aside from several educational certificates, I have my completion certificate from VICTIM IMPACT and I have been signed up for ANGER MANAGEMENT for quite some time.  It has been confirmed by Denny Laughlin that I am still on the list for that program.  I have been told to try to expedite the process so that you will not move me to Berlin.  However, I have no control over that and we as a unit have been told via notice not to request where we are on the list of programs.  There

7

>   are no other programs available to me.  What should I
>   do?

(Pl.'s Obj. to Def.'s Mot. Summ. J., Ex. 2.)  Lacasse responded:

>   Are you refusing to do SOP?  Is this what you
>   refer to as the religious based program?  If you are
>   currently participating in programs, you will not be
>   moved.  At some point, your refusal to do the SOP
>   program may jeopardize your bed in the South unit.
>   Without SOP, you will <u>not</u> be paroled.

(<u>Id.</u>)  Subsequently, however, the parties stipulated that absent a valid disciplinary reason, plaintiff will not be moved from his current housing.  (<u>See</u> Order of May 19, 2005 (document no. 55).)

In this suit, plaintiff asserts that defendants violated his rights under the establishment clause of the First Amendment by requiring him to participate in the religion-based SOP, and he asks the court to enjoin the DOC from: (1) imposing a faith-based program on him; and (2) "making adverse recommendations, denying parole, or retaliating in any manner for [exercising his] constitutional right not to participate in religious-based programs."

**Discussion**

Both plaintiff and defendants have moved for summary judgment. Plaintiff argues that defendant Coplan has admitted, in a deposition in another lawsuit, that the SOP is a religion-based program and that her admission entitles him to opt out of the SOP without consequence and have all references to the SOP stricken from his prison record. Defendants argue that they are entitled to summary judgment because plaintiff has failed to exhaust his administrative remedies, his claim is not ripe, and requiring him to complete the SOP does not violate his rights under the establishment clause.

A. Exhaustion

Defendants argue that plaintiff's suit is barred by 42 U.S.C. § 1997e(a), the exhaustion requirement of the Prison Litigation Reform Act. Specifically, defendants point to the fact that plaintiff sent Inmate Request Slips to the Warden and the Commissioner, rather than using "the first formal step required of submitting a request slip concerning this issue to the unit personnel" and then using the "required grievance form

when he addressed a written complaint to the Warden and the Commissioner."

Plaintiff concedes that he did not follow the grievance and complaint procedure set out in DOC Policy and Procedure Directive 1.16.  There is a good reason why he did not.  The Classification Authorization Decision form containing the decision to which he objected – <u>i.e.</u>, the recommendation that he participate in the SOP – explicitly stated that the decision was directly appealable to the Warden and the Commissioner and that the proper form of appeal was an Inmate Request Slip.  Moreover, rather than rejecting plaintiff's Inmate Request Slip as procedurally improper, the Warden provided plaintiff with a substantive response, on the merits of his request.  Accordingly, defendants' "lack of exhaustion" defense due to plaintiff's use of an "incorrect procedure," is of course unpersuasive.

It is arguable, based on this record, that plaintiff did not appeal the Warden's decision to the Commissioner, and, therefore, did not complete the available administrative process.  But defendants do not make <u>that</u> argument.  Given the absence of an

asserted and persuasive argument to the contrary, the court assumes, without deciding, that plaintiff's claim is fully exhausted.

B. Ripeness

Defendants next argue that plaintiff's claim is not ripe because he will not be eligible for admission into the SOP for approximately twenty years. Plaintiff disagrees, contending that he is currently subject to sanctions for his failure to comply with the SOP requirement in his 2003 Classification Authorization Decision.

"Two factors are used to evaluate ripeness: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" Doe v. Bush, 323 F.3d 133, 138 (1st Cir. 2003) (quoting Abbott Labs v. Gardner, 387 U.S. 136, 149 (1967)). "Ordinarily, both factors must be present." Id. (citing Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 535 (1st Cir. 1995)). Regarding events yet to occur, "the doctrine of ripeness . . . asks whether an injury that has not yet happened is sufficiently likely to happen to warrant

judicial review." Id. at 138 n.4 (quoting Gun Owners' Action League v. Swift, 284 F.3d 198, 205 (1st Cir. 2002)).

Here, the issue plaintiff seeks to have decided is not fit for judicial review. The right plaintiff identifies – i.e., the right not to have religious programming imposed upon him – is plainly of constitutional dimension. But that right is implicated neither by plaintiff's current circumstance nor the relief he seeks.

Plaintiff's current situation is that his 2003 Classification Authorization Decision lists the SOP as an assignment/recommendation. But NHSP inmates are not "forced" to enroll in the SOP; they must voluntarily apply for admission, a step plaintiff has yet to take. Thus, the SOP, religion-based or not, has not been imposed upon plaintiff; he has suffered no injury, constitutional or otherwise, resulting from the notation on his Classification Authorization Decision form.[3]

---

[3] In his memorandum of law in support of his objection to defendants' motion for summary judgment, plaintiff argues that he faces a variety of sanctions for "refusing to participate" in the SOP. Obviously, likely denial of parole is a hardship plaintiff would face if he did not complete the SOP, but given his

Moreover, the relief plaintiff seeks is not a revision of the SOP to eliminate any religious elements that may be included therein, but rather, elimination of the SOP notation from his classification materials. However, even if the court were to determine that some past version, or the current version, of the SOP was or is tainted by religious elements, such a determination would say nothing about the constitutional legitimacy of the SOP at whatever future time plaintiff becomes eligible and might

---

ineligibility for the SOP until a date much closer to his minimum release date, it can hardly be said that plaintiff's suffering from that particular hardship for his "refusal" to participate in the SOP. And, given that plaintiff would not be admitted to the SOP at this point in any event, even if he were to apply, it is difficult to characterize his current objections to the program as a refusal to participate in it.
    Plaintiff also seems to suggest that he may be transferred from his current housing unit for failing to participate in the SOP. However, it is undisputed, as a factual matter, that under NHSP policy, housing in the Medium South Unit is granted to those inmates who are currently participating in programming and that any inmate not involved in programming – for any reason – is at risk of being transferred to another housing unit. In other words, if plaintiff were to complete the SOP (or have it stricken from his Classification Decision Authorization form), and if he had no other programs available to him, he would be just as vulnerable to transfer from his current housing unit as he would be if he refused to apply for the SOP. Therefore, it is incorrect to say that plaintiff faces disciplinary action resulting from his "refusal" to participate in the SOP.

apply for admission.[4]  That is, given that plaintiff's participation in the SOP will occur, if at all, well in the future, and that the SOP evolves from term to term, plaintiff's potential future exposure to some past (and flawed) version of the SOP is not sufficiently likely to warrant judicial review now.  And, because plaintiff has not yet been admitted to the SOP, any pronouncement the court might make regarding the past or current state of the SOP would necessarily pertain exclusively to the constitutional rights of past and current enrollees,[5] rights

---

[4] "The curriculum of the SOP changes periodically, usually each term . . ."  (McCormack Aff. ¶ 7.)  For example:

> The SOP curriculum overview which outlines the stages of treatment in the SOP has been recently revised to provide notice to inmates of those materials, which may contain a spiritual reference, and of their right to refuse to participate or complete exercises with that content.

(McCormack Aff. ¶ 16.)  Obviously, one cannot predict with precision what materials will be in use when plaintiff becomes eligible, and applies for admission to the SOP.
  Similarly, because plaintiff has not applied for the SOP, much less participated in it, Warden Coplan's December 17, 2002, deposition testimony in <u>Davidson v. Stanley</u>, No. 02-190-JD, to the effect that she was aware that the SOP was a twelve-step program, says little about the SOP that will be available to plaintiff if and when he applies for admission.

[5] The degree to which plaintiff is asserting the rights of others, rather than his own, is well illustrated by his admission that his knowledge of the content of the SOP is based not upon

that are not plaintiff's to litigate.  See <u>Eulitt ex rel. Eulitt v. Me. Dep't of Educ.</u>, 386 F.3d 344, 351 (1st Cir. 2004) (explaining the circumstances in which one may assert the constitutional rights of a third party).  Accordingly, plaintiff's constitutional claims are not ripe for adjudication.

### Conclusion

For the reasons given, plaintiff's motion for summary judgment (document no. 59) is denied, and defendants' motion for summary judgment (document no. 60) is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

                                             _____
                                             Steven J. McAuliffe
                                             Chief Judge

August 29, 2005

cc:   Randy J. Duquette, pro se
      Mary E. Maloney, Esq.

---

participation, but on materials passed along to him by other inmates.  (Pl.'s Mem. of Law (with document no. 59) at 7 n.*.)